May it please the Court, Honorable Judges, you all know the story of how my client fled Uganda because of his persecution and torture in that country. Wait a minute, I don't know if he fled. His father, is his father a high official there? His father is a Matovu, the member of a family whose family name is tainted because of an association with- That didn't answer my question. His father is not a high official in Uganda. Is he a government official? He's not a government official. The family was associated with rebel activities and the family- Of course, your problem is that the IJ found otherwise. So, i.e., he found that he was not this person whose father was Matovu. Well, here's what the IJ did, Judge Bersan. The IJ admitted his birth certificate for the limited purpose of establishing his nationality, but suppressed it insofar as it would prove that he is a Matovu, the family that is suffering this persecution in Uganda. Now, that's an arbitrary decision. There was no explanation given for why that would be done. I thought that he had repeatedly said that his name was Berigye when he got to the United States and did not claim to be a Matovu, even though he was safely in the United States and using his name for all sorts of purposes. No, your Honor. He said that his name was Byakwaga, and I corrected that in my reply brief. I made a correction to that. I think I said Berigye. But he entered the United had a copy of his birth certificate at AR 550 showing that name and chose to admit that birth certificate for the limited purpose of proving that he's from Uganda instead of proving that he's a Matovu. Now, the birth certificate itself is unremarkable as to references to both Uganda and Matovu. There is nothing more inherently credible about the reference to Matovu in the birth certificate as against the reference to Uganda. And it is not explained as to why that would be done. I have two. Since you don't have that much time, let me just tell you the two things that I'm interested in. One is I'd like to know about the remand request and what material was in that request which could have made a difference on this identity issue and whether the BIA – and whether that's within our appeal now or our petition for review now. And the second question is the way the proceedings occurred, which – and whether that has an impact on our review, that is, that the judge never – he never actually gave his persecution story because the judge, as I understand it, just said, no, I'm not going to hear it. And I'm wondering if there's any case law regarding that way of approaching things and whether that itself isn't a reason to – whether a credibility determination made without the ability to tell the entire story is a valid credibility determination. Your Honor, I'll cover the BIA matter first. The BIA essentially adopted the immigration judge's position in a one-line statement on the merits of the claim. With respect to the remand, the petitioner had submitted his certified birth certificate, also submitted birth certificates of two daughters with his name as Matobu, daughters who he had claimed in his I-589 asylum application, a passbook savings account with his photograph at a younger stage in life showing that he's Matobu. And the Board of Immigration Appeals seemed to accept that those documents might, in fact, establish his identity. But instead of assessing and adjudicating the documents themselves, they took a punitive approach. They went and essentially denied the motion for remand, not because the documents didn't show he was Matobu, but because they said he had lied in representing himself as Biakwaga when he entered the United States. Is it true that he got arrested by police in the United States and he lied to them and he lied to the court in the United States about what his name was? Your Honor, it is true that he was placed in criminal proceedings in the United States and in those proceedings represented himself as he had done when he entered the United States as Biakwaga in those proceedings. He didn't say he was Matobu. He did not. But here's why, Your Honor. Was he thinking the American criminal proceedings would treat Matobu different from, I can't remember the other name, Biakwaga? Your Honor, here's what he felt. He had entered the United States as an unsophisticated person in the laws of this country. He said in his testimony that he felt he had no power to correct this transgression. And having so entered, Your Honor, he would not, he would have feared prosecution, perhaps deportation. He also did not say he was Matobu when he registered for school in the United States, right? He did not because he established his life for all purposes under the Biakwaga name, having entered using that name. That is a plausible argument. But our standard of review is if there's substantial evidence on the record as a whole that supports what the I.J. found, we do not have authority to overrule it. There is no... I wonder, when I look at pages six and seven of the I.J.'s decision about lying to the police who arrested him, lying to the court that convicted and sentenced him, lying to the school officials, the State of California, doctors who were there to assist him, who were there to assist him, why isn't that substantial evidence on the record as a whole that he wasn't a Matobu? It is not substantial evidence as a whole because if you evaluate it in light of Tercios v. INS, the evaluation must be done in light of all the circumstances. The fact that he entered this country under the name Biakwaga, his only source of identification, his passport, had the name Biakwaga, unsophisticated as to the laws of this country, any reasonable person would have established his life for all purposes as Biakwaga in this case. And when he recognized that he might be deported to his country when he was placed in removal proceedings, he revealed his true name, and his testimony was not internally inconsistent in any way. One question. On the motion to remand, there are a couple of school reports put in, and there he isn't listed as Matobu. So what does that mean? Your Honor, in the motion for remand? Yeah, they're attached to it. Ministry of Education school reports, and it says name Barigi Alan Simambo. His name is Alan Barigi Matobu Simambo. His certified birth certificate, Your Honor, in the motion for remand shows that. But the certified birth certificate was certified in 2002, as were his children's. Is that right? Beg your pardon? The certified birth certificates were certified in 2002. I believe so, Your Honor. But they were certified, and they showed that his name was Matobu. And I think most interestingly, the Board of Immigration Appeals seemed to accept that those documents could establish his identity. The remand decision was not made on the documents. An evaluation of the documents was never done by the Board of Immigration Appeals. They went into a punitive mode to punish him for misrepresenting his identity against Akinmade v. INS. There does seem to be some logical gap in the reasoning of the BIA, which says that even if the evidence established his identity, it doesn't diminish the fact that he lied and his past representations are sufficient to throw doubt on his representations concerning his identity and experiences in Uganda. So if they establish his identity, they would establish his identity. And it seems sort of circular to the start. And, Judge Berzon, there's no authority for that unless the immigration judge had, say, found his application frivolous under ACFR 208.20. But they didn't. You're very low on time, so you can reserve time. Yes, Your Honor. May I reserve? One more question here. Yes. You said that once he got into removal proceedings, then he revealed that his name was Motobu, even though it wasn't on his passport, because he had to protect himself from going back. Yes, Your Honor. I'm looking at page 101 of the administrative record where he's in removal proceedings. He's under oath. The judge asks him his name, and he says Alan Yakuaga Berigye. Not Motobu. Your Honor, that may very well have been as a force of habit after years in this country of having been called to and referred by that name. It may very well be. Your Honor, the fact that he represented himself as Yakuaga does not change the fact. And, Judge Noonan, I think you said it best when you said that the administrative law immigration judge has a regulatory and statutory obligation to fully develop the record. This record was not fully developed because of the disparate and arbitrary treatment of that birth certificate. Quite apart from the birth certificate, is it correct that although he wrote his story down in enormous detail in his application, he never got to testify to it? So the I.J., insofar as the coherence of his story might have thrown light in his identity, he never got to say it? Absolutely, Judge Berzon. The I.J. came in in violation of Garavias v. INS with a predisposition and said, look, because you can't prove that you are Motobu, I therefore find you don't have an application for asylum. But wouldn't telling his story have been a way to prove that he was Motobu? Absolutely, because the law of this circuit is very clear that testimony alone is sufficient to establish a claim of identity, a claim of asylum and even identity. We see Garavias, where an essential element of cancellation of removal is the date of entry. The court has allowed that to be proven by testimony alone. We see in Akinmade v. INS, the court saying that a refugee will sometimes misrepresent his identity in fleeing persecution. We, the court here, would require that this petitioner have the courtesy of establishing his claim and getting his story out. The asylum claim was effectively denied even before the story got out, when the judge said, you don't have an asylum application before us here. Thank you, counsel. Thank you. Good morning. May it please the court, my name is Marion Guyton, I'm with the U.S. Department of Justice, and I'm representing the respondent, the Attorney General in this matter. Notwithstanding the comments just made by Petitioner's counsel, the fact remains what we're dealing with here is an adverse credibility determination. But this is what really troubles me. I don't think I've ever seen a case like this in which the I.J. did not let him put on his story at all. He just stopped at the end. He made a decision before the evidence went on about the credibility of the story that had not even been testified to. And one way to the question of his identity was wrapped up with his story. Without hearing the story, what position was the I.J. in to make, to decide whether he was a Matovo or wasn't a Matovo? We had a very specific story that linked to his being a Matovo, and he could be cross-examined about it. You can look him in the eye and see if you think he's lying. All the things you do to make a credibility determination. That didn't happen. It was cut off. Justice Breyzan, his story was put into the record that he had two arrests. Yes, but he never got to testify to it, right? He never got to testify to it, be cross-examined on it, and have the I.J. evaluate his credibility on his entire story instead of on this small piece. But is there any case law in which this has happened, in which it's been approved, to just say, I'm not going to listen to your story, stop? I cannot specifically cite case law. However, in the handling of the the administrative proceeding, the immigration judge listened to the evidence. And the most important thing here is the immigration judge below and the board on appeal didn't know what to believe because if if. But they'd never heard the whole story. They only heard they heard the piece of it that had to do with the documents and his use of various names in the United States. And they never heard his story of persecution in Uganda and what that had to do with him being a Matovo. And and they had no ability to make a judgment. Judge Berzon, his identity goes to the heart of his claim. Are you are you saying that they listened to a story about whether he was Beru, Berige or Matovo, but once the I.J. thought you're not Matovo, he didn't want to listen to the story of how Matovos get persecuted? I wouldn't go that far, Judge Kleinfeld. I would say that that because the I.J. did not know what to believe as to his identity, whether he was as he described. And it wouldn't have been informative to that. You hear his entire story, which related to him being a Matovo and and have him cross-examined and see if that story made any sense. Wouldn't that be relevant to the question of whether or not he was who he said he was? But Judge Berzon, I think it's important to note here that the first time he said he was a Matovo was, and it's on page 111 of the administrative records, January 4th, 2000. And at that point, the immigration judge pointed out that you've been here before me twice and you said your name was this Biawaga Berige. And now for the first time, you say you're a Matovo. And he has a long story related to that. And it could be a total lie, but he never got to tell it. But, Judge Berzon, there were a series of lies from the fact that his passport and other entry documents, he used the name Berige. His his. Yes. But we have case law that says up to a point, he can do that, right? Yes. Al-Khamidi. But Al-Khamidi was mentioned by my esteemed counsel, opposing counsel. However, Al-Khamidi is distinguished because when you're fleeing from persecution from a country, that's one thing you use, whatever means you can to escape the persecution. But at a reasonable time thereafter, you can't wait two and a half years communicating with the officials of the college using a fictitious name. And then you come in in January 2000 and finally say, I am this other person. But the comment on how the birth certificate shows he was born in Uganda, but doesn't show his identity. Well, the immigration judge in his explanation indicated that it was not. He accepted it to show nationality, but not that he was. I understand that. How could he do that? Because he wasn't properly authenticated. Foreign documents are not as intrinsically reliable as. What was it to tell one fact from the other? Once he if you look at that, he's born in Uganda and his name is a member of that clan. Judge Newton, if that were an error, errors made below can be, it's a harmless error because it can be corrected on appeal before the board. However, the board listened to that and the board made a determination that even if he is who he says he is, it doesn't matter. Because you do that when there was no evidence. If he was who he said he was, I mean, your justification for what the IJ said is that he just wasn't who he said he was. If he was who he said he was, he has a whole story about what happened to him that was never heard. But the agency found was that he never established his case and the burden is on the. He never got to put on his case. He got to put on his case about identity. And if the IJ, if the BIA now says that even if the evidence establishes identity, it isn't true. How could he say that when he never put on his case? But if he's in that phenomenon, it's of his own making. If he had been honest with government officials from the start, or if he had provided a reason, explanation as to why. Well, he did present an explanation. And it's not impossible. Somebody has to make it. It could be a drill, but it's not impossible. It may not be impossible, but it's implausible that an individual who comes to this country at some point would not recognize and sophistication or know that he would not recognize that at some point you have to be honest in dealing with someone that you're seeking a benefit from. All right. But I guess as I indicated earlier, I have two problems with this case, which are related. And the second one that we're discussing now is what the BIA said about the remand, which you just alluded to. Even if the evidence establishes identity, that doesn't diminish the fact that he lied and therefore we're not going to believe that he was persecuted. How can they say that when nobody ever heard his story about persecution? Well, decisions on motions to reopen, to remand for further proceedings are within the broad discretion of the agency. But that's the irrational statement. Did he claim that he had been persecuted or that as a Mottobu, he would be persecuted? He claimed that there were two incidents in 94 and 96. He was arrested. There was civil disturbance or maybe even outright violence occurring in Uganda at that time. And there were sweeps and people were being arrested. And he was detained for two periods in 94 and 96. For quite a period of time. And he had any of the record. But he was released, Judge Brizard. I understand. But of the written documentation stories that I have seen in many, many of the cases, this is probably the most detailed in terms of his detailed story about what happened to him. It could all be made up. I understand it could be, but he never got to put it on. And he had a very long and elaborate, detailed story about things that happened to him as well as to his family. And he never got to say it. So how can somebody disbelieve it? The disbelief was based on the fact that he had been false with the U.S. government from beginning to the up until January 4, 2000. They didn't know what to believe. They did not know whether or not his story was a plausible one. No. And since they never looked him in the face and judged it the way one usually judges testimony, which is listen to somebody tell the story and ask them questions about it. Of course, they didn't know what to believe. They never asked. They never let him put the evidence on. And it's a very unusual case. I've never seen one. They just said, stop. We're not going to hear. But I do think the case is distinguishable from Akimadi in that at some point, a reasonable point after you are, you've reached St. Harvard, it's one thing to use false identification documents to escape the land of alleged persecution. But at some point within a reasonable time, you have to come clean and present a true account of why you fled your native land. So the per se rule is that if you lie to get in, which are which is OK, and even if you are who you say you are, because that's what the FBI said, even if the evidence establishes identity, he was who he says he was. The fact that he lied after he got here disqualifies him from asylum. No, the burden would be on him to present evidence that is that is consistent, believable, incredible. And he never got to put it on. Once again, Judge Berzon, if he is in a conundrum, it's of his own making. The he put the agency in a position where it did not know whether or not this person had presented sufficiently detailed information, credible, believable, in which they can establish, establish that the incidents that took place ever took place in his native land. Credibility determinations are based on the fact that because a person comes from a foreign land, the trial, in fact, has no way of determining whether or not those stories are true. And the only way they can determine that the stories are true. I feel silly about it. How can they make a judgment about a story they never heard and was not put on? There was no testimony. They didn't let him put it on. Judge Berzon, the governor would argue that that there is substantial evidence to support the immigration judge and the board's finding and that that finding is under the deferential substantial evidence test is entitled to deference. And this court should not seek to substitute this judgment for the trial fact. Thank you, counsel. For Ricky versus that. Gonzalez is submitted.
judges: Noonan, Kleinfeld, Berzon